■

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| MALIBU BOATS, LLC,<br>　　　Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>SKIER'S CHOICE, INC.,<br>　　　Defendant/Counterclaim Plaintiff. | Case No. 3:18-CV-15-TAV-HBG |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY OF PHILIP GREEN

█████████████████████

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND FACTUAL BACKGROUND ....................................................... 1

II. ARGUMENTS AND AUTHORITIES ................................................................................ 2

    A. Legal Standard ...................................................................................................... 2

    B. Mr. Green's testimony is reliable because it is based on supported facts ................ 3

        1. Mr. Green's testimony is admissible under Rule 702 .................................. 3

            a. Mr. Green reasonably relied on information from counsel .............. 3

            b. Mr. Green's damages analysis is entirely consistent with controlling law. ................................................................................ 5

            c. Defendant's case law is irrelevant. .................................................. 7

            d. The entirety of Mr. Green's opinion does not depend upon whether the '695 Patent is asserted. ................................................. 8

        2. Mr. Green's testimony is admissible under Rule 703 .................................. 8

    C. Mr. Green's damages analysis is properly apportioned and connected to the benefits of the '873, '161, and '777 Patents. ................................................... 10

    D. Mr. Green properly determined the amount of lost profits damages based on the sale of boats. ............................................................................................ 12

III. CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

                                                                    Page

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*,
   2013 WL 5958178 (N.D. Cal. Nov. 7, 2013) ............................................................. 6

*Cobalt Boats, LLC v. Brunswick Corp.*,
   773 F. App'x 611 (Fed. Cir. 2019) ......................................................................... 13

*Coffey v. Dowley Mfg., Inc.*,
   187 F. Supp. 2d 958 (M.D. Tenn. 2002) ................................................................ 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................................ 2, 4

*Ellipsis, Inc. v. Color Works, Inc.*,
   428 F. Supp. 2d 752 (W.D. Tenn. 2006) ............................................................ 7, 8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ............................................................................ 13

*Grain Processing Corp. v. Am. Maize Prods. Co.*,
   185 F.3d 1341 (Fed. Cir. 1999) ..................................................................... 5, 6, 11

*Greenwell v. Boatwright*,
   184 F.3d 492 (6th Cir. 1999) .................................................................................. 7

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) .................................. 2, 3

*Mactec Inc. v. Bechtel Jacobs Co.*,
   346 F. App'x 59 (6th Cir 2009) .............................................................................. 9

*Mannino v. Int'l Mfg. Co.*,
   650 F.2d 846 (6th Cir. 1981) .............................................................................. 4, 9

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017) ....................................................................... 11, 14

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003) .............................................................................. 2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018) .............................................................................. 13

*Radio Sys. Corp. v. Lalor*,
   Case No. 2:10-cv-00828 (W.D. Wash. Sept. 12, 2014) ......................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. L.E. Cooke Co.*,
   991 F.2d 336 (6th Cir. 1993) ........................................................................................... 7

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013) ...................................................................................... 13

*WesternGeco, L.L.C. v. ION Geophysical Corp.*,
   913 F.3d 1067 (Fed. Cir. 2019) ...................................................................................... 11

**<u>RULES</u>**

Fed. R. Evid. 702 .................................................................................................... 2, 3, 8

Fed. R. Evid. 702 advisory committee's note ............................................................... 2

Fed. R. Evid. 703 ............................................................................................ 4, 8, 9, 10

I. INTRODUCTION AND FACTUAL BACKGROUND

The testimony of Malibu's damages expert Philip Green is based on reliable facts and well-known methodology and should not be excluded. Specifically, Mr. Green relied on factually accurate and reliable information from Malibu's counsel that the '695 Patent is no longer being asserted in this case. He then conducted a damages analysis grounded in governing law applying that information and rendered an opinion properly apportioning lost profits based on the patented features and functionalities of the remaining asserted patents.

The information about the '695 Patent on which Mr. Green relied was no secret. On May 18, 2020, before the parties served any expert reports, counsel for Malibu contacted counsel for Skier's Choice, informing Skier's Choice that Malibu was no longer alleging infringement of the '695 Patent and proposing that the parties jointly dismiss all claims and counterclaims related to that patent as a way to narrow issues for trial. ECF No. 108-2. Malibu made this decision in part because the accused sales under the '695 Patent constitute ████████████████ ████████████████ of the accused sales for the three other asserted patents. ECF Nos. 107-2, 107-3. Counsel for Malibu also informed the experts submitting reports on Malibu's behalf, its damages expert Philip Green and its liability expert Kevin Breen, of these same facts. ECF No. 101-1 at 5; ECF No. 101- 2 at 16:20-17:6. Accordingly, when Messrs. Green and Breen served their opening expert reports on May 22, 2020, they did not include any opinions based on any infringement of the '695 Patent. ECF No. 101-1; ECF No. 96-4. Likewise, Skier's Choice's liability expert Eric Winkel submitted an opening expert report that did not analyze liability for any infringement of the '695 Patent.

As detailed in Malibu's motion to dismiss the '695 Patent, which Malibu hereby incorporates into this brief because of their substantial overlap, Malibu repeatedly tried to get

1

Skier's Choice to jointly dismiss claims related to the '695 Patent. ECF No. 107. But Skier's Choice repeatedly refused to agree unless Malibu would agree to unrelated and unfair demands, including delaying the discussions until after the July 15, 2020 deadline for filing dispositive and *Daubert* motions. ECF No. 107 at 2-5; ECF No. 108-2 at 4. Meanwhile, on July 15, 2020, Skier's Choice filed the present motion to exclude Mr. Green's testimony based on the flawed argument that Mr. Green improperly relied on information from Malibu's counsel that the '695 Patent is no longer being asserted, which allegedly renders his opinions unreliable.

As detailed below, Mr. Green reasonably relied on information from Malibu's counsel that Malibu is no longer asserting the '695 Patent. Based on that information, and consistent with relevant case law, Mr. Green considered the products covered by the '695 Patent as potentially non-infringing alternatives in conducting his damages analysis. Mr. Green's testimony clearly meets the requisite standard of reliability, and Defendant's *Daubert* motion to exclude should be denied.

## II.     ARGUMENTS AND AUTHORITIES

### A.     Legal Standard

Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579 (1993), task district courts with ensuring the jury is protected with "safeguards against unreliable or irrelevant opinions," but they do not require the district court to issue "guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). To the contrary, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) (citing advisory committee's note to Rule 702). At trial, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of challenging expert testimony. *Daubert*, 509 U.S. at

596. Thus, when the expert's "methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd.*, 598 F.3d at 852 (internal citations omitted).

      **B.    Mr. Green's testimony is reliable because it is based on supported facts.**

           **1.    Mr. Green's testimony is admissible under Rule 702.**

Skier's Choice asserts that Mr. Green's opinions are not reliable under Rule 702 because they are based on his understanding from counsel that Malibu is no longer asserting infringement of the '695 Patent or pursuing damages related to Defendant's infringement of that patent. ECF No. 100 at 5-9. Skier's Choice goes so far as to declare that "Mr. Green's ultimate opinions, therefore, ***lack any grounding in actual fact***" and that "[h]is opinions should be excluded as a result." *Id.* at 8-9 (emphasis added). Mr. Green's understanding is grounded in actual fact, and Skier's Choice is fully aware of it. Skier's Choice's liability expert did the same thing and did not analyze liability of the '695 Patent based on his understanding that it was no longer being asserted: "In this lawsuit, Malibu Boats asserts that Skier's Choice boats and/or surf systems infringe one or more claims of U.S. Patent Nos. 8,578,873 ('the '873 patent'), 9,260,161 ('the '161 patent'), and 10,322,777 ('the '777 patent') (collectively, the 'patents-in-suit' each of which is a 'patent-in-suit'). For this report, I have analyzed whether the asserted claims of the patents-in-suit are valid." Ex. 1 ¶ 3.

Not only is Mr. Green's understanding that Malibu has dropped its assertion of the '695 Patent accurate, but Mr. Green reasonably relied on information from Malibu's counsel in establishing his understanding.

              **a.    Mr. Green reasonably relied on information from counsel.**

Under Rule 702, the district court is assigned "the task of ensuring that an expert's

3

testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 579-80. Determining whether an expert's testimony "rests on a reliable foundation," goes hand-in-hand with Rule 703, which "provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id.* at 595 (quoting Fed. R. Evid. 703). Courts have held that an expert's "own experience," "background," and "literature and information furnished him by plaintiff's attorney," is "the type of material that expert witnesses often rely upon in forming opinions." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 853 (6th Cir. 1981).

It is common for experts to rely on counsel regarding the status of the ongoing litigation. This is usually conveyed in an expert report by stating, "I understand from counsel," or simply, "I understand." In fact, Defendant's experts do this very thing. For example, Defendant's damages expert, Mr. Arst stated, "I understand that Malibu's claims under the '695 Patent have not been dismissed from this case, and SC's Flow 1.0 remains an Accused Surf System." Ex. 2 ¶ 71. And Defendant's validity expert, Mr. Winkle stated, "I understand that the Court has not yet issued an order rejecting, adopting or modifying the constructions set forth in the Report and Recommendation. I also understand that the parties have briefed their respective positions on the constructions of disputed claim terms of the '777 patent, and that the Court has not yet ruled on those disputed claim constructions." Ex. 1 ¶ 182. Neither Mr. Arst nor Mr. Winkle cited ***any*** authority for these statements, though presumably the information was provided by counsel.

Furthermore, it is common for parties in patent litigations to narrow issues for trial. Indeed, some courts encourage or even require parties to do so. For example:

- Honorable Leonard P. Stark states in his Revised Procedures for Managing Patent Cases: "In order to manage my docket, and to ensure that litigation proceeds

4

efficiently, I will be highly receptive to reasonable proposals to reduce, at an appropriate stage or stages of a case, the number of: patents-in-suit, asserted claims, accused products, invalidating references, combinations of invalidating references, invalidity defenses, and claim construction disputes." (Ex. 3 at 7)

- Honorable Alan Albright, in his Order Governing Proceedings – Patent Case, sets deadlines for two separate meet and confers: "[The parties are required] to discuss significantly narrowing the number of claims asserted and prior art references at issue. Unless the parties agree to the narrowing, they are ordered to contact the Court's Law Clerk to arrange a teleconference with the Court to resolve the disputed issues." And "[The parties are required] to discuss narrowing the number of claims asserted and prior art references at issue to triable limits." (Ex. 4 at 9)

- Northern District of Illinois Local Patent Rule 3.1(a)(2) states: "In the Final Infringement Contentions, no Accused Instrumentality may be accused of infringing more than ten (10) claims per patent and twenty (20) claims overall, selected from the claims identified in the Initial Infringement Contentions." (Ex. 5)

There was, therefore, nothing unusual or improper about Mr. Green relying on counsel's representation that Malibu would not pursue any claims for infringing the '695 Patent, even though such information was not yet reflected in the case pleadings, as Skier's Choice notes. ECF No. 100 at 6.

### b. Mr. Green's damages analysis is entirely consistent with controlling law.

Furthermore, Mr. Green's analysis of Malibu's damages from Defendant's infringement of the '873, '161, and '777 Patents is consistent with relevant authorities on patent damages. Under controlling Federal Circuit law, a damages analysis must consider benefits of the asserted patents over non-infringing alternatives to those asserted patents. *See, e.g.*, *Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999). In particular, the Federal Circuit has held:

> A fair and accurate reconstruction of the "but for" market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed. Without the infringing product, a rational would-be infringer is likely to offer

5

>an acceptable non-infringing alternative, if available, to compete with the patent owner rather than leave the market altogether. …
>Thus, an accurate reconstruction of the hypothetical "but for" market takes into account any alternatives available to the infringer.

*Id.*

It is an undisputed fact that the Moomba Flow 1.0 surf system is not accused of infringing the '873, '161, and '777 Patents. Accordingly, it is appropriate when analyzing damages for the '873, '161, and '777 Patents to consider the specific benefits of the accused surf systems over non-infringing surf systems for the three patents at issue (i.e., the Moomba Flow 1.0), as Mr. Green did.

Skier's Choice cites no cases suggesting that products accused of infringing a formerly asserted (but not currently asserted) patent cannot be considered as a potentially non-infringing alternative. In fact, courts have held the opposite. For example, in *Apple, Inc. v. Samsung Elecs. Co.*, the court denied in relevant part a motion to strike expert testimony and a motion *in limine* to exclude testimony and evidence that products found not to infringe certain patents and no longer asserted against other patents were evidence of available non-infringing alternatives for the purposes of a damages analysis. *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 5958178, at *4 n.5, *5 (N.D. Cal. Nov. 7, 2013) ("The 2012 jury found that the Intercept did not infringe the '915 and '163 patents, and ***at the end of the 2012 trial*** the Intercept was ***not accused of infringing*** any other Apply patent at issue in the case. . . . [Thus] the Court finds that the Intercept is perhaps Samsung's ***most probative evidence*** regarding the availability ***of noninfringing alternatives***.") (emphasis added). Similarly, in *Radio System Corp. v. Lalor*, the court denied a motion to preclude reference to non-infringement of Plaintiffs' previously accused products noting: "[T]he ***evolution of the infringement allegations are relevant*** to the remaining issues. That Plaintiffs' other products were available ***as non-infringing products*** at the time of

6

the alleged infringement is also relevant to ***any damages analysis***." Case No. 2:10-cv-00828, slip op. at 3, 5 (W.D. Wash. Sept. 12, 2014) (ECF No. 164) (emphasis added). These two decisions are on point and disprove the arguments based on Skier's Choice's inapposite authority.

        **c.**        **Defendant's case law is irrelevant.**

Skier's Choice's effort to challenge Mr. Green's opinions under existing case law fails. Mr. Green's analysis is not "simply guess[ing] or speculat[ing]," as Defendant argues. ECF No. 100 at 5 (citing *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). Nor does the information from Malibu's counsel "contradict the evidence." ECF No. 100 at 5 (citing *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999)). Moreover, the facts clearly demonstrate that Mr. Green's assumptions regarding the '695 Patent are neither "unsupported" nor "incorrect." ECF No. 100 at 7 (citing *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958 (M.D. Tenn. 2002), and *Ellipsis, Inc. v. Color Works, Inc.*, 428 F. Supp. 2d 752 (W.D. Tenn. 2006)). Indeed, Defendant's reliance on *Coffey*, *Ellipsis*, and related cases is entirely unfounded.

In *Coffey*, which is neither a damages case nor a patent case, the plaintiffs admitted that their technical expert "may have been initially confused about the exact use of the [machine about which he was asked to opine]." *Coffey*, 187 F. Supp. 2d at 974. Furthermore, the expert admitted that he estimated key technical information such as a lever length of a wrench, which impacted the accuracy of his analysis. *Id.* Skier's Choice has not alleged that Mr. Green was confused about the issues upon which he opined or that he "estimated" any key technical information in his analysis.

In *Ellipsis*, the court cited numerous flaws in the expert's underlying data and methodology, specifically stating, "It is important to note that the nine flaws cited by TCW relate to both the underlying data and to the methodology and principles that Patzer employed when

7

using such data." *Ellipsis, Inc.*, 428 F. Supp. 2d at 759. But Skier's Choice does not even suggest that Mr. Green committed any of those nine flaws. And none of those nine flaws included relying on information from counsel regarding the status of the pending litigation or the identity of the patents in suit, the only issue for which Skier's Choice criticizes Mr. Green. *Id.*

Simply put, Skier's Choice does not cite a single case that even remotely suggests that it possible to do what Skier's Choice demands here—i.e., exclude an expert's opinion because the expert relied on accurate information from counsel and other technical experts regarding the identity of the patents asserted in the case. Counsel for Malibu has searched for such cases and likewise found no such authority.

### d. The entirety of Mr. Green's opinion does not depend upon whether the '695 Patent is asserted.

Additionally, Skier's Choice incorrectly argues that the entirety of Mr. Green's lost profits analysis relies on the comparison between the Moomba Flow 1.0 (covered by the '695 Patent) and later surf system models offered by Skier's Choice. Mr. Green's lost profits analysis also considers ███████████████████████████████████████████████████████ ███████████████████████████████████. *See, e.g.*, ECF No 101-1 at 57-59. This analysis is not based on the assumption that the Moomba Flow 1.0 surf system is a potentially non-infringing alternative, and therefore it is not implicated by Defendant's criticisms regarding the '695 Patent. Thus, even if the Court finds that Mr. Green should have considered the '695 Patent as an asserted patent for the purpose of his analysis (despite facts to the contrary), it would not impact the "entirety" of Mr. Green's opinion or warrant its exclusion as Skier's Choice contests.

For all of the foregoing reasons, Mr. Green's testimony is admissible under Rule 702.

### 2. Mr. Green's testimony is admissible under Rule 703.

Skier's Choice also argues that Mr. Green's testimony is inadmissible under Rule 703,

because it is based on the purportedly hearsay statements of counsel that the parties are in the process of withdrawing claims related to the '695 Patent and because those statements are allegedly not "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." ECF No. 100 at 11. Skier's Choice is incorrect.

It is well-established that experts may rely on hearsay if it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Mactec Inc. v. Bechtel Jacobs Co.*, 346 F. App'x 59, 78 (6th Cir 2009) (quoting Fed. R. Evid. 703). And the Sixth Circuit has held information provided by counsel to be the type of material that expert witnesses often rely upon, specifically stating:

> It is clear that there was an adequate basis for his opinion within the meaning of Rule 703. **He relied upon** studies, his own experience in dynamic testing, his background as a bio-mechanical engineer, and upon literature and ***information furnished him by plaintiff's attorney***. The fact that much of this was hearsay which would probably not be admitted into evidence has nothing to do with the case. The question is whether it is the type of material that an expert would rely upon, and there is no showing in this record that it is not. In fact, **it was the type of material that expert witnesses often rely upon in forming opinions**.

*Mannino*, 650 F.2d at 853 (holding trial judge erred in excluding the testimony) (emphasis added).

As evidenced by Defendant's experts' own reliance on its counsel's "hearsay statements," it is common for experts to rely on information from counsel regarding the status of the ongoing litigation (*see e.g.*, Ex. 2 ¶ 71; Ex. 1 ¶ 182). An expert in any field would reasonably rely on information from counsel regarding the status of confidential negotiations between the parties in the case for which the expert has been asked to submit an expert report. Mr. Green reasonably relied on information provided to him by Malibu's counsel regarding Malibu's efforts to streamline the case for trial and the parties' confidential discussions regarding the same. Skier's Choice does not cite to any authority suggesting otherwise. Therefore,

Mr. Green's opinions are admissible under Rule 703.

### C. Mr. Green's damages analysis is properly apportioned and connected to the benefits of the '873, '161, and '777 Patents.

Skier's Choice also argues that "Mr. Green improperly identified the features and functionalities enabled by the asserted patents." ECF No. 100 at 12. Once again, Defendant's criticism hinges on the fact that Mr. Green did not consider the '695 Patent as an asserted patent for the purposes of his analysis. More specifically, not including the '695 Patent as an asserted patent changes the scope of the features and functionalities enabled by the asserted patents because the features and functionalities enabled by the '695 Patent are different from those enabled by the remaining asserted patents-in-suit.

Mr. Green properly excluded the '695 Patent from the list of asserted patents in his lost profits calculations because Malibu does not allege infringement of that patent or seek damages based on any infringement of the '695 Patent. Using his correct understanding of the scope of Malibu's allegations, Mr. Green correctly estimated damages based on the benefits provided by the asserted patents. Mr. Green relied on Malibu's technical expert Mr. Breen to determine the features and functionalities enabled by the remaining three patents-in-suit—namely, the automated ability to transfer a surf wake quickly and conveniently from one side of the boat to the other side. ECF No. 101-1 at 34-35. Skier's Choice does not dispute that the '873, '161, and '777 Patents (the three remaining patents-in-suit) are directed to systems providing the "automated" ability to transfer a surf wake quickly and conveniently from one side of the boat to the other. Rather, Skier's Choice seems to suggest that Mr. Green should have included the features and functionalities enabled by the no-longer-asserted '695 Patent—namely, the manual ability to transfer surf wake from one side of the boat to the other—as a feature of the asserted patents for his analysis. But Skier's Choice does not cite a single case suggesting it is necessary

10

or even appropriate to include features or functionalities of patents no longer asserted in a litigation as though they were features and functionalities of patents still in suit. Therefore, Mr. Green's market reconstruction is "a fair and accurate reconstruction of the 'but for' market" as set forth in *Grain Processing*, 185 F.3d at 1350-51, cited by Skier's Choice as controlling authority. Defendant's tactics to prevent Malibu from formally removing the '695 patent from the case prior to filing its present motion do not render Mr. Green's analysis "unreliable."

Properly identifying the features and functionalities enabled by the asserted patents is relevant to the well-established *Panduit* analysis for determining lost profits, which incorporates an element of apportionment that "ties lost profit damages to specific claim limitations and ensures that damages are commensurate with the value of the patented features." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017). In particular, "[t]he second [*Panduit*] factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention." *Id.* at 1285.

Skier's Choice argues that Mr. Green's allegedly "faulty assumption [that Malibu does not assert the '695 Patent] taints his *Panduit* analysis," in that his analysis allegedly "fails to adequately apportion the lost profits sought to the features of the claimed inventions of all the patents-in-suit (whatever those may be)." ECF No. 100 at 12-13 (citing *WesternGeco, L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019)). Again, Defendant's entire argument turns on its flawed position that the '695 Patent should be treated as an asserted patent, which it is not for the reasons stated above. Notably, Skier's Choice does not argue that Mr. Green's *Panduit* analysis would be "faulty" if the '695 Patent is no longer an asserted patent. Mr. Green properly applied the *Panduit* factors to determine the amount of Malibu's lost sales attributable to Skier's Choice's infringement.

11

### D. Mr. Green properly determined the amount of lost profits damages based on the sale of boats.

Skier's Choice further argues that the patented functionality must serve as the ***only*** basis of customer demand for Malibu to claim lost profits on sales of boats. ECF No. 100 at 15. This assertion relies on a mischaracterization of Mr. Green's analysis and is not consistent with the case law.

First, Skier's Choice mischaracterizes Mr. Green's analysis. Mr. Green does not argue that the non-patented features drive consumer demand. ECF No. 100 at 13. Rather, he concludes that absent the use of the patented features of the '873, '161, and '777 Patents, Skier's Choice would have lost certain boat sales to competitors, including Malibu. *See, e.g.*, ECF No. 101-1 at 49. More specifically, Mr. Green's analysis of *Panduit* factor 2 cites documents and testimony indicating the importance of wake surfing technology covered by the '873, '161, and '777 Patents to Defendant's ability to compete for sales in the performance sport boat industry. *See, e.g.*, ECF No. 101-1 at 45-49. Skier's Choice does not contest the evidence cited by Mr. Green in *Panduit* factor 2. Nor does Skier's Choice contest Mr. Green's conclusion that "Skier's Choice's documents and deposition testimony indicate the importance of the above-described benefits enabled by practice of the Asserted Patents in generating sales to compete against other performance sport boat manufacturers. As such, Skier's Choice has made sales through its use of this patented functionality that otherwise would have been made by other [performance sport boat manufacturers]." ECF No. 101-1 at 49. Accordingly, Mr. Green properly connected the patented functionality of the '873, '161, and '777 Patents to Defendant's sales of overall boats, and ability to compete in the performance sport boat industry, not just surf systems, and his testimony should not be excluded.

12

███████████████████████████

Second, Defendant's assertion that the patented functionality must serve as the only basis of customer demand to recover lost profits damages based on the sale of boats is simply wrong as a matter of law. The Federal Circuit has made clear that "[t]he *Panduit* factors do not require showing demand for a particular embodiment of the patented functionality . . . Nor does it require any allocation of consumer demand among the various limitations recited in a patent claim." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013). Defendant's reliance on *Ericsson*, *Power Integrations*, and *Cobalt Boats* is misplaced. Each of these cases are specific to reasonable royalty analyses and do not apply to determination of lost profits:

- *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014): "The essential requirement is that the ultimate ***reasonable royalty award*** must be based on the incremental value that the patented invention adds to the end product."

- *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018): "Undertaking an apportionment analysis where ***reasonable royalties are sought*** generally requires determination of the royalty base to which the royalty rate will be applied."

- *Cobalt Boats, LLC v. Brunswick Corp.*, 773 F. App'x 611, 614, 619 (Fed. Cir. 2019): "Nor need we address the issue of damages, although we note that we have substantial reservations about the district court's damages rulings, which permitted Cobalt to present a damages calculation to the jury that used the profit of entire boats as its starting point—even though Cobalt concedes 'that the swim step is not "the basis" of demand' for Brunswick's boats." And noting "[t]he jury awarded a ***per-unit royalty*** of $ 2,500, resulting in a damages award of $ 2,690,000."

Defendant's citation to *Ericsson* for the point that "apportionment is required even for non-royalty forms of damages," (ECF No. 100 at 14) does not change this. Rather, Federal Circuit authority rejects Defendant's assertion and instead holds that if the *Panduit* factors are met, there is no need for further apportionment:

> Synopsys and the amicus brief argue that complex multi-feature devices necessitate change in patent damages law. They argue that not requiring an additional apportionment step after the *Panduit* test has been met would "allow multiple entities to obtain lost profits on

13

> the same product where each entity holds a patent on a different 'but for' feature of the same product." . . . When a patentee proves it is entitled to recover lost profit damages, as Synopsys concedes Mentor has done here, it is entitled to be made whole for the injuries it suffered as a result of the infringement. . . . We conclude that, when the *Panduit* factors are met, they incorporate into their very analysis the value properly attributed to the patented feature. We affirm the district court's denial of judgment as a matter of law and/or motion for new trial with regard to damages.

*Mentor Graphics*, 851 F.3d at 1286. As in *Mentor Graphics*, Mr. Green's "apportionment was properly incorporated into the lost profits analysis and in particular though the *Panduit* factors." *See id.* at 1289.

In addition, to the extent Defendant asserts that Mr. Green's reasonable royalty analysis is improperly based on the sale of boats, to be clear, Mr. Green's reasonable royalty is based on the **number of accused surf systems** sold by Defendant. Mr. Green's reasonable royalty analysis is not structured as a percentage of the value of an entire boat, and any arguments by Defendant that Mr. Green's reasonable royalty is based on the value of a boat are inapposite and misleading.

## III. CONCLUSION

Defendant's motion is not grounded in any relevant case law, but rather in a tactical delay in the formal withdrawal of Malibu's claims based on the '695 Patent with the sole goal of excluding Malibu's damages expert. Malibu informed Skier's Choice and Mr. Green that it was withdrawing its claims based on the '695 Patent. Mr. Green properly relied on that information and did not consider the '695 Patent as an asserted patent in conducting his damages analysis. And Mr. Green properly determined lost profits based on the sale of boats under the well-established *Panduit* analysis. For the reasons set forth herein, Malibu respectfully requests that the Court deny in its entirety Defendant's Motion to exclude Mr. Green's testimony.

14

▮▮▮▮▮▮▮▮▮▮

Dated: July 29, 2020

Respectfully submitted,

*/s/ David S. Almeling*
Darin W. Snyder (*admitted pro hac vice*)
dsnyder@omm.com
David S. Almeling (*admitted pro hac vice*)
dalmeling@omm.com
Cameron W. Westin (*admitted pro hac vice*)
cwestin@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Matthew M. Googe (TN BPR #030164)
mgooge@robinsoniplaw.com
Michael E. Robinson (TN BPR #024681)
rrobinson@robinsoniplaw.com
**ROBINSON IP LAW, PLLC**
9274 Kingston Pike, Suite 1403
Knoxville, Tennessee 37922
Telephone: (865) 978-6480
Facsimile: (865) 978-6493

*Attorneys for Plaintiff*
***MALIBU BOATS, LLC***

███████████████

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 29, 2020.

                                                  */s/ David S. Almeling*
                                                  David S. Almeling